**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MARGARITA S.,[1]

                                      Plaintiff,

    v.                                                             6:17-CV-967 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
LORIE E. LUPKIN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.    <u>PROCEDURAL HISTORY</u>

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on March 21, 2014, alleging disability beginning March 10, 2014. (Administrative Transcript ("T") at 17, 179-88). Her applications were denied initially on July 1, 2014. (T. 72-97). Administrative Law

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

Judge ("ALJ") John P. Ramos conducted a hearing on December 17, 2015, at which plaintiff testified. (T. 41-55). The ALJ held a supplemental hearing on May 19, 2016, to hear the testimony of Vocational Expert ("VE") David A. Festa, along with additional testimony from plaintiff. (T. 56-71).

In a decision dated June 22, 2016, the ALJ found that plaintiff was not disabled. (T. 14-40). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on July 14, 2017. (T. 1-6).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.*

3

However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

As of the date of the December 17, 2015 administrative hearing, plaintiff was 47 years old. (T. 60, 179). She attended regular education classes in high school, but left after completing the tenth grade. (T. 459). She resided with her husband and one of her adult sons, and frequently received assistance from her other adult children and

4

relatives. (T. 46, 51, 314-318).

Plaintiff's recent employment history included work as a housekeeper and as a certified nurse's aide, working in a nursing home and in patient's homes. (T. 52-53, 239-46). She stopped working in March 2014 due to her physical and mental impairments. (T. 459). Plaintiff had a history of grand mal seizures that dated back to her childhood, but had generally stabilized with medication. (T. 43, 1021). She also experienced frequent pain and pressure in her bladder, and had been diagnosed with interstitial cystitis[2] in 2013. (T. 51, 388). She testified that her combination of physical impairments, including back and knee pain, made her unstable on her feet, and that a fear of falling prevented her from driving or regularly leaving her home. (T. 51-52). In August 2015, plaintiff sought psychiatric treatment for anxiety and depression that stemmed, in part, from worries about her ongoing medical issues. (T. 983).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 20-29). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

After finding that plaintiff met the insured status requirements through September 30, 2019, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 10, 2014. (T. 19). Next, the ALJ found

---

[2] Interstitial cystitis is a chronic condition causing bladder pressure, bladder pain, and pelvic pain, that results in a frequent need to urinate. https://www.mayoclinic.org/diseases-conditions/interstitial-cystitis/symptoms-causes/syc-20354357.

that plaintiff had the following severe impairments at step two of the sequential evaluation: seizure disorder; chronic lumbago; bilateral hearing loss; depressive disorder; anxiety disorder; and panic disorder. (T. 19-22). At the third step, the ALJ determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 21-23).

The ALJ found at step four of the analysis that plaintiff could perform less than the full range of light work. (T. 23-29). Specifically, he found that plaintiff could stand for a maximum of two hours and walk for a maximum of two hours in an eight-hour day. (T. 23). She was able to sit for one hour at a time, stand for thirty minutes at a time, and walk for thirty minutes at a time. (*Id*.) She could only occasionally reach overhead, push, or pull with either upper extremity, but could frequently handle, finger, and feel with either hand. (*Id*.) Plaintiff was able to occasionally stoop, kneel, crouch, and crawl. (*Id*.) The ALJ found that plaintiff should not climb ladders or scaffolds, work at unprotected heights or with dangerous machinery, operate a motor vehicle, be exposed to extreme temperatures, or work in an environment with more than "moderate" noise, as defined in the Dictionary of Occupational Titles. (*Id*.)

With regard to mental limitations, the ALJ found that plaintiff retained the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact with others to the extent necessary to carry out simple tasks; and handle reasonable levels of simple

6

work related stress, in that she could make decisions directly related to the performance of simple work, and handle typical work place changes and interactions associated with simple work. (*Id.*) In making this RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling ("SSR") 96-4p. (*Id.*) Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 as well as SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record evidence. (T. 24). The ALJ next found that plaintiff did not retain the capacity to perform any of her past relevant work. (T. 29). Relying on the VE testimony, the ALJ determined at step five that plaintiff would be able to perform jobs that existed in significant numbers in the national economy. (T. 29-30). Therefore, the ALJ determined that plaintiff had not been under a disability from the alleged onset date of March 10, 2014, through the date of his decision. (T. 30-31).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1. The ALJ's step two determination was not supported by substantial evidence. (Pl.'s Br. at 15-19) (Dkt. No. 11).

2. The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 19-21).

3. The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 21-22).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 3-8) (Dkt. No. 14). For the following reasons, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI. SEVERE IMPAIRMENT

### A. Legal Standards

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Briggs v. Astrue*, No. 5:09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Rep.-Rec.), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and

remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013) (quoting *McConnell v. Astrue*, No. 6:03-CV-521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR 85-28, 1985 WL 56856, at *3. However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work will not be considered severe. *Id.* The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id.*

The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If

9

the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Id.* at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

**B.  Application**

Plaintiff argues that the ALJ erred in determining that plaintiff's urinary issues generally, and interstitial cystitis specifically, were not severe impairments at step two of the sequential evaluation. (Pl.'s Br. at 13-14). Plaintiff was diagnosed with interstitial cystitis in July 2013, after complaining of urinary frequency and urgency, and associated pain and lack of sleep. (T. 388, 393). Plaintiff was treated with medication, but her symptoms worsened in 2014. (T. 396, 761, 763). Treatment included a weekly bladder instillation[3] of dimethyl sulfoxide ("DMSO") for six week periods in 2013, 2014, and 2015. (T. 396, 755, 785).

---

[3] Bladder instillation is the use of a catheter to insert liquid medication directly into the bladder. https://www.mayoclinic.org/diseases-conditions/interstitial-cystitis/ diagnosis -treatment/drc-20354362.

The ALJ considered plaintiff's interstitial cystitis at step two, but found that plaintiff's medical records showed no treatment for this condition or similar urinary issues after November 2015. (T. 21, 1077-81). He also noted that plaintiff denied any urinary disturbances when she was being evaluated for back pain in March 2016.[4] (T. 21, 1280). Therefore, he concluded that plaintiff's interstitial cystitis and related conditions did not constitute severe impairments. (T. 21).

This court finds no reversible error with regard to this conclusion. Despite plaintiff's testimony that she had to constantly use the bathroom and received regular DMSO treatment, plaintiff has not identified any medical records that would have compelled the ALJ to conclude that interstitial cystitis impacted her ability to perform basic work activities. *See House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 147 (N.D.N.Y. 2012) ("Although the medical record certainly documents treatment with respect to this impairment, no provider identified any impact on Plaintiff's ability to perform basic work activities.") Indeed, plaintiff suffered from interstitial cystitis and received the potentially disruptive DMSO treatment in late 2013, while she was still working full time. (T. 273, 396, 432). The record also shows that plaintiff had missed one or more of her DMSO appointments. (T. 396, 432). Plaintiff had an additional opportunity to testify at her May 2016 supplemental hearing, but did not address her interstitial cystitis, or offer any evidence as to how frequently the condition would force

---

[4] Plaintiff correctly notes that this note states "Patient denies any bowel or urinary disturbances *caused by the back pain*," suggesting that such problems existed, but were unrelated to back pain. (T. 1280). However, plaintiff's most recent medical records include comprehensive medical histories and physical examinations from March and April 2016, and do not include any complaints about her interstitial cystitis or the need for DMSO treatment. (T. 1269-84).

11

her to be off-task during the workday. (T. 60-61). At the close of the supplemental hearing, plaintiff was provided an opportunity to submit more recent records from her urologist, such as documentation of further DMSO treatment, and did not. (T. 70-71). The ALJ was permitted to consider this lack of treatment records in his determination. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."); *Pulos v. Comm'r of Soc. Sec.*, No. 1:18:CV-248, 2018 WL 5801551, at *4 (W.D.N.Y. Nov. 5, 2018) (substantial evidence supported ALJ's determination that knee and back injury was non-severe where there was no evidence of on-going treatment in the record).

In addition, the ALJ did not deny plaintiff's claim at step two, and considered the combined effects of all of plaintiff's impairments in his RFC analysis. (T. 18, 22). Although the ALJ made only cursory mention of plaintiff's interstitial cystitis in his RFC determination (T. 24), plaintiff has not identified any record evidence, besides her brief testimony, that would suggest functional limitations arising from this impairment, such as an excessive time off-task, that should have been included in the RFC. *See Alford v. Colvin*, No. 5:12-CV-977 (NAM/CFH), 2013 WL 6839554, at *13 (N.D.N.Y. Dec. 27, 2013) (where medical record did not indicate that plaintiff's Crohn's disease interfered with his day on a regular and continuing basis, ALJ did not err in failing to specify a certain number of bathroom breaks in the RFC); *Cf. Lowe v. Colvin*, No. 6-15-CV-6077 (MAT), 2016 WL 624922, at *4 (W.D.N.Y. Feb. 17, 2016) (remanding where ALJ failed to provide good reasons for rejecting treating physician's opinion that plaintiff's colitis required that he have "unlimited" access to the bathroom). Likewise,

plaintiff has not demonstrated that further DMSO treatment, if needed, was incompatible with a regular work schedule or would require significant unexcused absences. Therefore, the exclusion of plaintiff's interstitial cystitis from the list of severe impairments at step two did not impact the ALJ's determination at step four or five in the sequential evaluation.

## VII. REMAINDER OF RFC EVALUATION

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at

150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

**B.    Application**

Plaintiff did not challenge the ALJ's determination with regard to her mental impairments, but contends that the ALJ erred in his evaluation of her physical limitations. As noted above, the ALJ found that plaintiff could perform less than the full range of light work. (T. 35). Plaintiff contends that the ALJ misconstrued the medical opinion of non-examining consultant Dr. Ronald Devere, who reviewed plaintiff's medical records and responded to the ALJ's interrogatory on January 28, 2016. (T. 1236-1246). The ALJ gave "great weight" to Dr. Devere's opinion, and it is the only medical opinion in the record that addresses plaintiff's ability to meet the exertional demands of light work.[5]  (T. 27-28, 1241-44). *See Christy v. Comm'r of Soc. Sec.*, No. 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *10 (N.D.N.Y. Oct. 20, 2015) ("[A]n ALJ may rely on the opinions of non-examining medical experts."); *see*

---

[5] Plaintiff's treating neurologist, Dr. Ahmed Shatla, issued a December 15, 2015 opinion regarding the frequency of plaintiff's seizures and the amount of time that this impairment would put her off-task, but declined to complete a medical source statement regarding plaintiff's ability to lift, sit, stand, or walk. (T. 727-737, 985-86, 1083-1090).

14

*also Lugo v. Comm'r of Soc. Sec.*, No. 3:16-CV-746 (GTS), 2017 WL 4005621, at *9 (N.D.N.Y. Sept. 11, 2017) (collecting cases).

Dr. Devere opined that plaintiff's medical records established chronic grand mal seizures and chronic low back pain. (T. 1236, 1238). Based on the available objective medical evidence, Dr. Devere opined that plaintiff could occasionally lift or carry up to twenty pounds, and frequently lift or carry up to ten pounds. (T. 1241). He also opined that plaintiff could occasionally reach overhead and frequently reach in all other directions. (T. 1243). He opined that plaintiff was capable of occasionally pushing and pulling, operation of foot controls, balancing, kneeling, stooping, crouching, and crawling. (T. 1244). He also found that plaintiff should never climb ladders or scaffolds but could occasionally climb stairs or ramps. (*Id.*)

Dr. Devere also completed the following check-box form regarding plaintiff's ability to sit, stand, or walk:

**II. SITTING/STANDING/WALKING**

Please check how many <u>hours</u> the individual can (if less than one hour, how many minutes):

**At One Time without Interruption**

| | Minutes | | | | Hours | | | | |
|---|---|---|---|---|---|---|---|---|---|
| A. Sit | — | ☒1 | ☐2 | ☐3 | ☐4 | ☐5 | ☐6 | ☐7 | ☐8 |
| B. Stand | 30 | ☐1 | ☐2 | ☐3 | ☐4 | ☐5 | ☐6 | ☐7 | ☐8 |
| C. Walk | 30 | ☐1 | ☐2 | ☐3 | ☐4 | ☐5 | ☐6 | ☐7 | ☐8 |

**Total in an 8 hour work day**

| | Minutes | | | | Hours | | | | |
|---|---|---|---|---|---|---|---|---|---|
| A. Sit | — | ☐1 | ☐2 | ☐3 | ☐4 | ☐5 | ☒6 | ☐7 | ☐8 |
| B. Stand | — | ☐1 | ☒2 | ☐3 | ☐4 | ☐5 | ☐6 | ☐7 | ☐8 |
| C. Walk | — | ☐1 | ☒2 | ☐3 | ☐4 | ☐5 | ☐6 | ☐7 | ☐8 |

If the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?

(T. 1242). The ALJ interpreted this section as Dr. Devere's opinion that plaintiff was "able to sit for one hour at a time for a total of six hours in an eight hour day, stand for 30 minutes at a time for a total of two hours in an eight-hour day, and walk for 30 minutes at a time for a total of two hours in an eight hour day." (T. 27). He then incorporated those functional limitations into his RFC determination and his hypothetical questions to the VE. (T. 23, 66).

Plaintiff argues that Dr. Devere may not have meant to treat "standing" and "walking" as distinct activities, and that "[t]here is no indication that Dr. Devere intended his opinion to be construed to mean that plaintiff is capable of standing and walking for a cumulative of four-hours, rather than a combined total of two."[6] (Pl. Br. at 20). Plaintiff's contention appears to be entirely speculative, and even if facially plausible, it does not render the ALJ's more expansive interpretation of Dr. Devere's opinion unreasonable or unsupported by substantial evidence. The interrogatory, which was provided by the ALJ, sets out separate entries for standing and walking. (T. 1242). It also contemplates that the total time for sitting, standing, or walking set out in the physician's opinion may "equal or exceed 8 hours." (*Id*.) Defendants also note that the Commissioner has typically considered "standing" ("Remaining on one's feet in an upright position at a workstation without moving about") and "walking" ("Moving

---

[6] If plaintiff could only stand/walk for a total of two hours, and could only sit for one hour at a time without interruption, she would likely be unable to meet the requirements of most light or sedentary work, due to an inability to sit for prolonged periods. *See* 20 C.F.R. § 404.1567(b) (". . . a job is in [the light work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing of pulling of arm or leg controls . . . . If someone can do light work, we determine that she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time").

16

about on foot") to be distinct physical activities. *See* SSA POMS DI 25001.001(A)(78) and (91), *available at* https://secure.ssa.gov/poms.NSF/lnx/0425001001. (Def. Br. at 6).

The ALJ's interpretation of Dr. Devere's opinion is also consistent with the other medical evidence cited in his RFC determination, and relied upon in Dr. Devere's opinion. (T. 24-25, 1238). Physical examinations in March and April 2016 found mild to moderate tenderness in plaintiff's paraspinal muscles, sacroliac joints and gluteal areas, but there were no significant clinical signs of radiculopathy, myelopathy, or radicular pain. (T. 1282-83, 1292). Plaintiff exhibited a normal gait, and full range of motion of the hips, knees, and ankles bilaterally. *(Id.)* The available imaging reports showed only mild impairment of the lumbar spine. (T. 25, 1288). The ALJ also considered plaintiff's description in the medical record of her daily activities, such as cooking, cleaning, laundry, and shopping, which was less restrictive than her hearing testimony indicated. (T. 26, 49-51, 461).

Moreover, plaintiff's counter-interpretation of Dr. Devere's opinion is essentially a request that the court re-weigh the medical evidence. Resolving conflicts in the evidence is the province of the ALJ. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389. 399 (1971)); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (the court must defer to the Commissioner's resolution of conflicting evidence). Here, the ALJ appropriately evaluated the objective medical evidence and the relevant medical opinions, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond

with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). Therefore, this court concludes that his RFC determination was supported by substantial evidence.

## VIII. <u>STEP FIVE DETERMINATION</u>

### A. **Legal Standards**

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical is proper. *Id*. at 276-77.

### B. Application

In order to determine whether there were unskilled, light work jobs that existed in significant numbers in the national economy that plaintiff could perform, the ALJ asked the VE a hypothetical question that mirrored his ultimate determination of plaintiff's RFC. (T. 65-70). The VE testified that, based on his professional experience, there were a series of jobs available in the national economy that an individual with that RFC would be able to perform. (T. 67-69). The ALJ relied on this testimony at step five. (T. 29-30). Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: January 18, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge